UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT HEINKE,

    Plaintiff,

    v.

COUNTY OF TEHAMA SHERIFF'S DEPT., CORRECTIONAL OFFICER CLAYTON DELAUGHDER and DOES 1-30,

    Defendants.

NO. CIV. S-12-2433 LKK/KJN

O R D E R

Plaintiff Robert Heinke brings this civil rights action against Defendants, arising from injuries he alleges he suffered as an inmate at the Tehama County jail.

Pending before the court is Defendants' motion to dismiss Plaintiff's first amended complaint. Defs' Mot., ECF No. 27. For the reasons provided herein, the court GRANTS, in part, and DENIES, in part, Defendants' motion.

## I. BACKGROUND

The complaint is written in a haphazard manner and, thus, it is difficult for the court to be certain of the chronology of

the events alleged. The following is the court's best effort.

**A. Factual Background**[1]

On June 10, 2011, Plaintiff was booked into the Tehama County jail as a pre-trial detainee. When he entered the jail, Plaintiff had no foot injury and he weighed 170 pounds.

On either June 15th or June 16th, Plaintiff awoke from a nap. He heard several of the inmates in the pod talking quietly about "jumping him." Plaintiff requested to leave the pod. Defendant DeLaughder, a correctional officer, indicated that he approved of Plaintiff's request and removed Plaintiff from the pod.

Plaintiff has no independent recollection of what happened next. However, other inmates later told Plaintiff that he was tasered as he exited the pod and fell to the floor.[2] When Plaintiff was tasered by Defendant DeLaugher, his foot became caught in a grate. Plaintiff fell over his foot, which remained in a stationary position between the grate and the floor. He experienced immediate pain, followed by prominent and painful swelling.

After Plaintiff was injured, he was placed in a solitary cell. Although he was in and out of consciousness, he knows that he received no medical attention during the first ten days, nor was

---

[1] These facts are taken from the allegations in the Plaintiff's First Amended Complaint, ECF No. 24, at 2-6, unless otherwise specified. The allegations are taken as true for purposes of this motion only. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

[2] Plaintiff's ability to prove his case is, of course, not at issue in this motion to dismiss.

1 he provided pain medication or anti-inflammatory drugs.  Plaintiff
2 was deprived of food and water for the majority of the time that
3 he was housed in the segregation unit.  Plaintiff remembers being
4 hungry and asking for food and water, and then being ridiculed by
5 the guards because "as he described their reaction, he was hobbling
6 around like a frog."  Id. at 4, ¶ 14.  Plaintiff's ankle injury and
7 his deteriorating medical condition were obvious to the
8 correctional personnel who visited his cell on a regular basis.
9 Plaintiff was not seen by any medical person until June 21, 2011.
10      On June 21, 2011, Plaintiff was seen by Laura Wood, P.A., who
11 was "genuinely surprised about the left heel being fractured and
12 crushed as it was."  Id. at 4, ¶ 16.  A Jail Incident Report for
13 that day described Plaintiff as unaware of Defendant's presence,
14 wet from having urinated on himself, unable to ambulate, and with
15 a bruise on the corner of his right eye and a small cut on his
16 hand, but the report did not mention Plaintiff's broken ankle.
17 Plaintiff was taken to the hospital the next day.
18      On June 22, 2011, Plaintiff described his problem during a
19 medical visit to the Orthopedic Institute of California. Plaintiff
20 stated that he experienced acute pain and swelling in his left foot
21 after a 300-pound correctional officer (Defendant Delaughder)
22 stepped on his foot and twisted it, while it was in a grate.  At
23 that medical visit, Plaintiff still had significant pain and
24 swelling in his foot.
25      Plaintiff further believes that he was tased immediately
26 before he was moved to a new unit on June 27, 2011.

1    Plaintiff further alleges that after Heinke's release (from
2 what is not specified), he was seen in the emergency room at St.
3 Elizabeth Community Hospital, where x-rays were taken and a CAT
4 scan was ordered. He was then seen for orthopedic consultation and
5 treatment, where he was diagnosed with an "intra-articular tongue-
6 type fracture of the left calcaneus with some intra-articular
7 displacement, but heel varus and heel height discrepancy." Id. at
8 3, ¶ 10. Plaintiff was also found to be dehydrated and to have
9 lost significant weight.

10    Because Plaintiff became severely dehydrated, and the swelling
11 and pain in his ankle were left untreated, his mental health
12 deteriorated. Furthermore, as a result of the delay in treating
13 Plaintiff's foot while at the jail, Plaintiff has significant
14 scarring, continuing pain, and difficulty ambulating.

15    Plaintiff went into jail a very fit man and emerged barely
16 able to walk. During his period of incarceration, Plaintiff's
17 lower dentures disappeared, his prescription glasses were broken,
18 and he lost approximately 40 pounds. Plaintiff is also missing two
19 prescription bottles of Soma and Norco that were given to Deputy
20 C. Benson, the arresting officer. While incarcerated, Plaintiff
21 did not receive any of his medications, including pain medications
22 that had been prescribed to him for degenerative disk disease in
23 his cervical spine. He also did not receive pain medication for
24 his injured foot.

25    Plaintiff asserts the following causes of actions: (1) a 42
26 U.S.C. § 1983 action against all Defendants for their "deliberate

4

1  indifference to Mr. Heinke's constitutional right to be free from
2  cruel and unusual punishment" and for Defendants' use of "excessive
3  force in violation of the Fourth Amendment"; (2) a 42 U.S.C. § 1983
4  action against Defendant DeLaughder, alleging violations of
5  Plaintiff's Fourth and Eighth Amendment rights; (3) an action
6  against Defendant DeLaughder for violation of The Bane Act,
7  California Civil Code § 52; (4) an action against all Defendants
8  for violation of Title II of the Americans with Disabilities Act;
9  and (5) an action against Defendant DeLaughder for battery.

**B. Defendants' Motion to Dismiss**

On June 10, 2013, Defendants filed the instant motion to dismiss, ECF No. 27, which Plaintiff opposes, ECF No. 29.

**II. STANDARD FOR A MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges a complaint's compliance with the federal pleading requirements. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). Moreover, this court "must accept as true all of the factual allegations contained in the complaint." Erickson v.

Pardus, 551 U.S. 89, 94 (2007).[3]

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Iqbal, 556 U.S. at 679. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[4] A

---

[3] Citing Twombly, 550 U.S. at 555-56, Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

[4] Twombly imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the

6

complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

### III. ANALYSIS

**A. Plaintiff's Causes of Action Against the County**

Defendants argue that Plaintiff's first and fourth causes of action should be dismissed insofar as they are asserted against the County because Plaintiff has failed to allege "facts establishing either that the alleged deprivation of civil rights was the result of a County policy or that Plaintiff was deprived of any service as the result of a disability." Def's Mot., ECF No. 27, Att. 1, at 6.[5]

---

long-established "no set of facts" standard of <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), although it did not overrule that case outright. <u>See</u> <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 968 (9th Cir. 2009) (the <u>Twombly</u> Court "cautioned that it was not outright overruling <u>Conley</u> ...," although it was retiring the "no set of facts" language from <u>Conley</u>). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1215 (9th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 2101 (2012). <u>Starr</u> compared the Court's application of the "original, more lenient version of Rule 8(a)" in <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002) and <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (per curiam), with the seemingly "higher pleading standard" in <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336 (2005), <u>Twombly</u> and <u>Iqbal</u>. <u>See</u> <u>also</u> <u>Cook v. Brewer</u>, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

[5] Defendants further argue that Plaintiff's second, third, and fifth causes of action are asserted against Defendant DeLaughder alone, and not against the County. Def's Mot., ECF No. 27, Att. 1, at 6. Plaintiff agrees that his remaining causes of action are not asserted against the County.

7

**i. First Cause of Action Against the County: Municipal Liability**

As to the first cause of action, Defendants argue that Plaintiff has failed to sufficiently allege that County policies caused Plaintiff to suffer an unconstitutional punishment.

Under Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978), a Section 1983 plaintiff cannot state a claim for municipal liability based on a theory of respondeat superior. A municipal government entity may be held liable under Section 1983, however, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694.

That is, to hold a municipality liable for the actions of its officers and employees, a plaintiff must allege one of the following: (1) that a municipal employee was acting pursuant to an expressly adopted official policy; (2) that a municipal employee was acting pursuant to a longstanding practice or custom; or (3) that a municipal employee was acting as a "final policymaker." Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004).

Plaintiff's first cause of action is predicated upon his assertion that:

> The Sheriff's Department operates the Tehama County Jail under a policy whereby the civil rights of inmates are routinely violated, where the correctional staff apply mental and physical abuse upon inmates for the intentional purpose of controlling them by force and harming them. Under this policy inmates such as plaintiff are denied

8

            timely access to medical treatment after instances of physical injury or correctional officer abuse. The County Sheriff's Department instituted and permitted a policy allowing correctional officials to employ excessive force and engage in sadistic acts. These acts included the ankle battery, deprivation of food, water and opportunities for maintaining hygiene, and withholding medical care and pain medication.

Defs' Mot., ECF No. 27, Att. 1, at 6, ¶ 24.

    While the Plaintiff's pleadings are less than perfectly clear, it appears that they can be construed as sufficient. In sume, the complaint can be read as asserting that Defendant DeLaughder injured Plaintiff and was acting pursuant to a longstanding practice or custom of the Defendant County. Moreover, he alleges that he was denied timely access to medical treatment after his ankle was injured; that excessive force was used against him; and that he was deprived of food, water, and hygiene--all pursuant to ongoing practices or customs of the Defendant County. For pleading purposes, the court finds Plaintiff's allegations sufficient to provide the Defendant County with fair notice of what the claim is and the grounds upon which it rests.

    Defendants properly note that liability for improper custom may not be predicated on isolated or sporadic incidents. Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996)). Ultimately, upon the court's evaluation of a motion for summary judgment or at trial, a plaintiff can demonstrate the existence of such a municipal policy by showing "widespread practices or evidence of repeated constitutional violations for which the errant

municipal officers were not discharged or reprimanded." Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal citations omitted).  However, a plaintiff is not required to present each contour of a widespread practice at the pleading stage.

The court finds it sufficient that Plaintiff has articulated the particular nature of the County Defendant's alleged customs or practices (i.e., the County's denial of timely access to medical care, excessive force, and deprivation of necessities) as tied to specific factual allegations of Plaintiff's injuries.  The fact-specific nature of Plaintiff's allegations indicate that the allegations, however scattered, are neither conclusory nor threadbare, within the meaning of Iqbal.

Defendants' motion to dismiss Plaintiff's first cause of action as against the County Defendant is, therefore, DENIED.

**ii. Fourth Cause of Action Against the County: Americans with Disabilities Act ("ADA")**

Defendants argue that Plaintiff's Americans with Disabilities Act ("ADA") claim against the County "fails as a matter of law because the failure to provide medical treatment for an otherwise qualifying disability is not a basis for liability under the ADA." Defs' Mot., ECF No. 27, Att. 1, at 8.

Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public

10

entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (1990).

To establish a violation of Title II of the ADA, a plaintiff must show that (1) he or she is a qualified individual with a disability; (2) he or she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of his or her disability. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002) (citing Weinreich v. Los Angeles County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997)).  The ADA prohibits discrimination because of disability, not inadequate treatment for disability. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.")).

Defendants do not contest Plaintiff's ability to establish that he is a qualified individual with a disability but, instead, contest whether Plaintiff has demonstrated exclusion or discrimination *by reason of* his disability. See Defs' Mot., ECF No. 27, Att. 1, at 8-10, Defs' Reply, ECF No. 30, at 5-7.

In his opposition to Defendants' motion, Plaintiff asserts that his ADA claim is based on "his having no access at all to in house or outside medical treatment during the critical days after

his leg was damaged." Pl's Opp'n, ECF No. 29, at 5. As Defendants properly note, Plaintiff's claim could be construed as an allegation that he received inadequate treatment for his injury or disability, which would be insufficient to set forth an ADA claim.

However, in his First Amended Complaint, Plaintiff also alleges that, upon asking for food and water during his segregation, he was ridiculed by the guards for "hobbling around like a frog," which suggests that Plaintiff was excluded from receiving foot and water by reason of his disability. Indeed, at oral argument, Plaintiff's counsel affirmed that Plaintiff is asserting, in his ADA claim, that a direct causal connection exists between the injury he sustained and his later deprivation of food and water.

Construing the facts in the light most favorable to Plaintiff, the court finds that Plaintiff's ADA claim against the County goes beyond allegations of general inadequacy of medical treatment provided to him at the jail. Plaintiff's allegations that he was denied access to medical treatment for his ankle, coupled with his allegations that the guards mocked him *for his disability* in response to his requests for necessities, sufficiently demonstrates that Plaintiff was denied the benefits of necessities and medical care by reason of his disability. Thus, Plaintiff's ADA claim alleges more than the County's failure to attend to the medical needs of disabled prisoners.

Defendants' motion to dismiss Plaintiff's ADA claim against the County is, therefore, DENIED.

**B. Plaintiff's Causes of Action Against Defendant DeLaughder**

Defendants argue that Plaintiff's third, fourth, and fifth causes of action against Defendant DeLaughder should be dismissed because "Plaintiff has failed to plead facts establishing the elements of the claims." Defs' Mot., ECF No. 27, Att. 1, at 10.

**i.   Third Cause of Action Against Defendant DeLaughder: California Civil Code Section 52.1 (Bane Act)**

The Tom Bane Civil Rights Act, section 52.1 of the California Civil Code, provides a civil action for damages based on interference "by threats, intimidation, or coercion" with plaintiffs' rights under the Constitution and laws of California and the federal government. Cal.Civ.Code § 52.1(a)&(b) (2005).[6]

---

[6] California's Bane Civil Rights Act provides:
(a) If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. . . .

(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

13

Section 52.1 was intended to be a state law analogue to 42 U.S.C. § 1983. Holland v. City of San Francisco, No. 10-cv-2603-THE, 2013 WL 968295, at *9, 2013 U.S. Dist. LEXIS 34294, at *27 (N.D.Cal. March 12, 2013) (citing Assembly Committee on the Judiciary, Bill Analysis, AB 2719 (as introduced Feb. 25, 2000)). In contrast to section 1983, however, section 52.1 applies to private actors as well as to government agents, there is no qualified immunity, and liability under section 52.1 is limited to violations of constitutional and statutory rights accomplished by "threats, intimidation, or coercion." Venegas v. County of Los Angeles, 153 Cal.App.4th 1230, 1242 (2007). The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." Austin B. v. Escondido Union Sch. Dist., 149 Cal.App.4th 860, 883 (2007) (citing to Jones v. Kmart Corp., 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844 (1998)).

There are four elements to a claim brought under the Bane Act: (1) the defendant interfered with or attempted to interfere with plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) the plaintiff reasonably believed that if he exercised his constitutional right the defendant would commit violence against him, or the defendant injured plaintiff to prevent

---

Cal. Civ. Code § 52.1(a)&(b) (2005).

1  him from exercising his constitutional right; (3) the plaintiff was
2  harmed; and (4) the defendant's conduct was a substantial factor
3  in causing the plaintiff's harm.  See id. at 882-83 ("The word
4  'interferes' as used in the Bane Act means 'violates.'"); see also
5  Stamps v. Superior Court, 136 Cal.App.4th 1441, 1447 (2006) (the
6  Bane Civil Rights Act is intended to supplement Ralph Civil Rights
7  Act and to allow an individual to seek relief to prevent violence
8  before it occurs).  In general, "[a] defendant is liable if he or
9  she interfered with or attempted to interfere with the plaintiff's
10 constitutional rights by the requisite threats, intimidation, or
11 coercion."  Shoyoye v. County of Los Angeles, 203 Cal.App.4th 947,
12 956 (2012).

13 The Court of Appeal in Shoyoye concluded that "the statute was
14 intended to address only egregious interferences with
15 constitutional rights, not just any tort." 203 Cal.App.4th at 959,
16 137 Cal.Rptr.3d at 849.  While some courts hold that coercion
17 cannot simply be inherent in the constitutional violation alleged,
18 others do not.  Compare id. and Gant v. County of Los Angeles, 765
19 F.Supp.2d 1238, 1253-54 (C.D.Cal 2011), with Cole v. Doe 1 thru 2
20 Officers of City of Emeryville Police Dep't., 387 F.Supp.2d 1084,
21 1103 (N.D.Cal. 2005).

22 Defendants argue that Plaintiff has failed to plead facts
23 "demonstrating any threats, intimidation, or coercion by Officer
24 DeLaughder . . . . to prevent Plaintiff from exercising any legal
25 right."  Defs' Mot., ECF No. 27, Att. 1, at 11.  In opposition,
26 Plaintiff argues that he sufficiently alleged that Defendant

15

DeLaughder intimidated Plaintiff by "the withholding of nutrition and medical care from the isolated injured plaintiff, as a means to keep him quiet so he could not report DeLaughder's mistreatment that caused damage to his foot." Pl's Opp'n, ECF No. 29, at 5.

Plaintiff has plead facts sufficient to demonstrate that he was threatened, intimidated, or coerced by Defendant DeLaughder. Defendants correctly note that Plaintiff has not specifically alleged that he contemplated filing a complaint against Defendant DeLaughder based on his ankle injury, nor has Plaintiff explicitly alleged that Defendant DeLaughder's actions prevented Plaintiff from filing such a complaint.

Nevertheless, Plaintiff has a statutory right to file actions against a correctional officer for alleged constitutional violations,[7] and Plaintiff has sufficiently shown that Defendant DeLaughder took actions to threaten, intimidate, or coerce Plaintiff. From the facts alleged, the court finds it reasonable to infer that Defendant DeLaughder's threats, intimidation, or coercion were, at a basic level, intended to quell any viable courses of dissent. Thus, the factual allegations pleaded plausibly give rise to an entitlement to relief under the Bane Act.

Defendants' motion to dismiss Plaintiff's third cause of action against Defendant DeLaughder is DENIED.

////
////

---

[7] See, e.g., Public Law 96-247, 94 Stat. 349 (1980).

16

### ii. Fourth Cause of Action Against Defendant DeLaughder: Americans with Disabilities Act ("ADA")

In response to Defendants' motion to dismiss Plaintiff's ADA claim against Defendant DeLaughder, Plaintiff states that he "is not alleging these claims against DeLaughder as an individual" and that the allegations in his First Amended Complaint stating that Defendant DeLaughder "is liable for such damages should be stricken." Pl's Opp'n, ECF No. 29, at 6.

Indeed, there is no individual liability under the ADA. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA").

Defendants' motion to dismiss Plaintiff's fourth cause of action against Defendant DeLaughder is GRANTED, WITHOUT LEAVE TO AMEND.

### iii. Fifth Cause of Action Against Defendant DeLaughder: Battery

Under California law, battery is defined as the "willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242 (2008). To succeed on a civil claim for battery, Plaintiff must demonstrate that "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." Brown

17

1  v. Ransweiler, 171 Cal.App.4th 516, 526-27 (2009).

2  Amongst other factual allegations, Plaintiff has asserted that Defendant DeLaughder stepped on his foot and twisted it, while it was in a grate. See First Am. Compl., ECF No. 24, at 3. Plaintiff has also asserted, throughout his First Amended Complaint, that Defendant's touching caused injury to Plaintiff's ankle. From these allegations, it is reasonable to infer that Defendant DeLaughder's actions were intentionally performed, they resulted in a harmful or offensive touching of Plaintiff, Plaintiff did not consent to the touching, and the touching caused harm to Plaintiff. Thus, Plaintiff has sufficiently alleged a battery claim against Defendant DeLaughder.

Defendants' motion to dismiss Plaintiff's fifth cause of action against Defendant DeLaughder is DENIED.

### IV. CONCLUSION

Accordingly, for the reasons provided herein, the court DENIES Defendants' motion to dismiss each of Plaintiff's claims, except Plaintiff's ADA action against Defendant Delaughder. Defendants' motion to dismiss Plaintiff's ADA action against Defendant DeLaughder is GRANTED, WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

DATED: July 31, 2013.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

18