1
2
3
4
5
6
7

8                   UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT HEINKE,                    No.  CIV. S-12-2433 LKK/KJN

12            Plaintiff,

13      v.                             **ORDER**

14   COUNTY OF TEHAMA SHERIFF'S
     DEPT., CORRECTIONAL OFFICER
15   CLAYTON DELAUGHDER and
     DOES 1-30,
16
              Defendants.
17

18                      **I.   BACKGROUND**

19      Plaintiff was a pre-trial detainee at the Tehama County Jail

20   in June, 2011.  He alleges that while he was being transferred

21   from a dormitory to a single cell, defendant Officer Clayton

22   DeLaughder broke his foot[1] and tasered him.[2]  Plaintiff alleges

23   _____

24   [1] In his Amended Complaint ("Complaint"), plaintiff alleges that
     his foot was caught in a grate "when he was accosted" by
25   defendant DeLaughder.  Complaint ¶¶ 10 & 11.

26   [2] Plaintiff alleges both that DeLaughder tasered him, and that
     plaintiff does not know who tasered him.  Complaint ¶¶ 28
27   ("DeLaughder used excess force in … deploying a taser") & 39
     (plaintiff was tasered by "jail employee, identity still
28   unknown").

                              1

that while he was in the single cell, DeLaughder deprived him of food and water, and denied him medical attention for his injured foot.[3]

Plaintiff alleges that he was subjected to excessive force and cruel and unusual punishment.  Defendants move for summary judgment.  The motion will be granted.

## II.   UNDISPUTED FACTS

1.   Plaintiff Robert Heinke was arrested and incarcerated at the Tehama County Jail on June 10, 2011. Defendants' Statement of Undisputed Facts ("DSUF") (ECF No. 36-1, pp. 4-6) ¶ 1.

2.   Plaintiff was initially housed in a single cell, but was re-housed into a dormitory on June 14, 2011.  DSUF ¶ 2.

3.   A short time after being housed in the dormitory, Plaintiff made a request to leave because he felt uncomfortable around the other inmates.  This request was approved, and Plaintiff was re-housed into a single cell.  DSUF ¶ 3.

4.   Plaintiff has no memory of events that transpired after he left the dormitory, and up to the time he woke up in the single cell.  DSUF ¶ 5.

5.   On June 22, 2011, at the advice of jail medical staff, Plaintiff was transferred by jail staff to the hospital for examination of an injury to Plaintiff's foot.  DSUF ¶ 4.

---

[3] The parties variously refer to the injured body part as the "foot," "ankle" and "heel."

2

6.    Plaintiff has no memory as to the cause of his injury.  DSUF ¶ 6.  However, plaintiff did not get his foot caught in a grate.  DSUF ¶ 7.

7.    Plaintiff has no memory of any altercation with defendant Officer Clayton DeLaughder.  DSUF ¶ 6.  In fact, plaintiff concedes that "there was no altercation with Officer [DeLaughder]."  Pl. Resp. to DSUF ¶ 6.

8.    Plaintiff has no memory of seeing Officer DeLaughder anytime between when plaintiff left the dormitory and when plaintiff was transferred to the hospital.  DSUF ¶ 9.[4]

9.    Plaintiff is ignorant as to whether any inmate, other than himself, was denied food or water.  DSUF ¶ 13.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that the movant is 'entitled to judgment as a matter of law'"); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

---

[4] Plaintiff asserts that this is "disputed."  However, the declaration he cites does not put this in dispute.  See Declaration of Robert Heinke (February 24, 2014) ("R. Heinke Decl.") ¶ 5.  The declaration says only that he does not remember what happened, and that he spoke to DeLaughder at some unspecified "later" time.

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011) (quoting Fed. R. Civ. P. 56(a)); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (en banc) (same), cert. denied, 132 S. Ct. 1566 (2012).

Under summary judgment practice, the moving party bears the initial responsibility of informing the district court of the basis for its motion, and "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact cannot be ... disputed." Fed. R. Civ. P. 56(c)(1); Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) ("The moving party initially bears the burden of proving the absence of a genuine issue of material fact") (citing Celotex v. Catrett, 477 U.S. 317, 323 (1986)).

A wrinkle arises when the non-moving party will bear the burden of proof at trial. In that case, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387.

If the moving party meets its initial responsibility, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Oracle Corp., 627 F.3d at 387 (where the moving party meets its burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine

4

1   issues for trial").  In doing so, the non-moving party may not

2   rely upon the denials of its pleadings, but must tender evidence

3   of specific facts in the form of affidavits and/or other

4   admissible materials in support of its contention that the

5   dispute exists.  Fed. R. Civ. P. 56(c)(1)(A).

6        "In evaluating the evidence to determine whether there is a

7   genuine issue of fact," the court draws "all reasonable

8   inferences supported by the evidence in favor of the non-moving

9   party." Walls, 653 F.3d at 966.  Because the court only

10  considers inferences "supported by the evidence," it is the non-

11  moving party's obligation to produce a factual predicate as a

12  basis for such inferences.  See Richards v. Nielsen Freight

13  Lines, 810 F.2d 898, 902 (9th Cir. 1987).  The opposing party

14  "must do more than simply show that there is some metaphysical

15  doubt as to the material facts ....  Where the record taken as a

16  whole could not lead a rational trier of fact to find for the

17  nonmoving party, there is no 'genuine issue for trial.'"

18  Matsushita, 475 U.S. at 586-87 (citations omitted).

19                        **IV.  ANALYSIS**

20       **A.   Fourth Amendment – Use of a Taser.**

21       Plaintiff alleges that defendant DeLaughter used excessive

22  force by tasering plaintiff during the transfer from the

23  dormitory to the single cell.  At trial, it will be plaintiff's

24  burden to show that excessive force was used on him.  Peraza v.

25  Delameter, 722 F.2d 1455, 1457 (9th Cir. 1984) ("It follows that

26  until a plaintiff proves excessive force was used in effectuating

27  the arrest, there is no constitutional violation in a case such

28  as this where there is no dispute that the police had the right

                                5

to arrest Peraza"). On summary judgment however, it is moving

defendants' initial burden to show "that there is an absence of

evidence" to support plaintiff's case.  Oracle Corp., 627 F.3d at

387.  Defendants easily meet this initial burden.

First, defendants point out that plaintiff has not

identified any evidence that DeLaughter used a taser on the

plaintiff.  Plaintiff himself has no memory of being tasered, or

any recollection of anything that happened during the transfer.

DSUF ¶ 5; Deposition of Robert Heinke (December 11, 2013)

("R. Heinke Depo.") (ECF No. 36) at 89;[5] Plaintiff Robert

Heinke's Answers to Defendant County of Tehama's

Interrogatories,[6] Set One (November 27, 2013) ("Pl. Answers")

(ECF No. 36-3 at 14-18) ¶ 5.[7]  The only basis for plaintiff's

allegation that he was tasered is comments he heard, that were

made by unidentified "other inmates," who said that plaintiff was

tasered.  See Pl. Answers ¶¶ 5 ("other inmates mentioned

[plaintiff] having been carried out after being tased") & 6

("Plaintiff heard other inmates when they told him 'they carried

you out,' and also 'That's what you looked like when you were

---

[5] These excerpts are at Attachment A to Defendants' Notice of
Motion and Motion for Summary Judgment ("Motion").

[6] Defendants did an excellent job in their thorough and
persuasive summary judgment motion.  However, the court notes
that that neither defendants nor plaintiff complied with E.D.
Cal. R. ("Local R.") 250.2, for propounding and answering
Interrogatories, and that plaintiff failed to comply with Local
R. 250.4, in answering the requests for admissions.

[7] The Interrogatory Answers are Attachment C to the Declaration
of Keelynn Beutler (ECF No. 36-3).

tased'").[8]

　　In addition, defendants have offered evidence that DeLaughder did not taser plaintiff.  DeLaughder testified that "[a]t no point did I use a taser on Mr. Heinke," and "I did not cause or witness the cause of any injury to Mr. Heinke."[9] Declaration of Clayton DeLaughder (January 9, 2014) ("DeLaughder Decl.") (ECF No. 36-5) ¶ 8.[10]

　　Second, defendants point out that plaintiff entirely fails to offer any evidence that he was subjected to "excessive force." Even if the "other inmates" were correct that someone tasered plaintiff – even if there were any evidence that defendant DeLaughder did so, which there is not –  there is no evidence, nor any inference from the evidence or the circumstances, that

---

[8] In his Complaint, plaintiff alleges: "Before he was released from jail, Heinke and other inmates were watching a program about a man that had been tasered.  Comments were made by the inmates saying that's how Heinke looked after he was tasered by the cops."  Complaint ¶ 19.

[9] Plaintiff testifies that he has no memory of what occurred during the transfer, leaving defendant DeLaughder as the only witness identified by either party.  In such a circumstance, the court "must carefully examine the evidence in the record to determine whether the [officer's] testimony is internally consistent and consistent with other known facts."  Gonzalez v. City of Anaheim, ___ F.3d __ , 2014 WL 1274551 at *1 (9th Cir. 2014) (en banc) (decedent was the only other witness to the events).  Plaintiff has not identified anything that would cause the court to doubt DeLaughder's testimony.

[10] Defendants have also offered an expert report purporting to show that the tasers checked out by DeLaughder were not used during the relevant period, except for "spark tests."  See Declaration of Bryan Chiles (October 30, 2013) (ECF No. 36-4). In light of plaintiffs' failure to meet his burden, and defendants' other evidence, the court need not examine or comment upon the expert report or the data it is based upon.

its use was "excessive."  Plaintiff does not assert that every use of a taser, no matter what the circumstances, is excessive force, nor does he offer any authority for such an assertion even if he had made it.  In fact, it appears that whether the use of a taser – a "painful and frightening blow" – is justified or not, depends upon the "totality of the circumstances."  Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010).  Plaintiff has offered no evidence of any kind as what he claims the circumstances were when the taser was allegedly used.

The defendants having met their initial summary judgment burden, the burden shifts to plaintiff to show that there is a genuine dispute about whether or not he was tasered, and if so, whether or not it was reasonable in light of the circumstances.

Plaintiff's sole response to defendants' factual showing that DeLaughder did not taser plaintiff is two statements in his Opposition brief: "Plaintiff disputes that," and "Plaintiff also contends he was tasered, although he has no access to the jail video surveillance that would have shown that."  Plaintiff's Revised Opposition to Motion for Summary Judgment ("Pl. Oppo.") (ECF No. 45) at 5.[11]  Plaintiff does not direct the court to any declaration, deposition testimony, discovery document or any other evidence in support of these statements.  The court has, nevertheless, reviewed plaintiff's declaration and the declaration of his counsel – the only two documents filed with plaintiff's opposition to the summary judgment motion – and finds

---

[11] The court notes that plaintiff does not indicate that he ever sought the "jail video surveillance" during discovery.

1   no statement in either document that puts the defendants' showing

2   in dispute.   Indeed, there is no reference to any taser being

3   used on plaintiff in either declaration.[12]

4        Plaintiff has utterly failed to meet his burden.   Defendants

5   are entitled to summary judgment on the claim that defendants

6   inflicted a constitutional injury by using a taser on plaintiff.

7        **B.    Fourth Amendment – The Foot Injury.**

8        Plaintiff alleges that DeLaughder broke plaintiff's ankle

9   during the transfer from the dormitory to the single cell, by

10  getting his foot "caught in a grate when he was accosted by

11  defendant DeLaughder."   Complaint ¶ 10. Plaintiff also alleges

12  that DeLaughder stepped on plaintiff's foot while it was caught

13  in the grate.   Complaint ¶ 11.

14       Defendants once again point out that plaintiff has offered

15  no witnesses or other evidence of any kind in support of this

16  allegation.   As discussed above, defendants note that plaintiff

17  has no memory of what happened to him during the transfer.[13]   In

18  addition, DeLaughder has presented evidence that he did not cause

19  this injury.   He testified under oath that "[a]t no point did I …

20  strike, step on, or fall on Mr. Heinke," and "I did not cause or

21

22  _____

23  [12] The sole reference to "taser" in either document is counsel's
    questioning whether the jail "has proper protocols for checking
24  out and using tasers," and her assertions that "there is no
    declaration the policy was followed and no categorical
25  declaration no taser was used was used [sic] on Mr. Heinke."
    Dove Decl. ¶ 7.

26  [13] The court notes the discrepancy between plaintiff's claim that
    he knows exactly how he got his ankle injury (an attack by
27  DeLaughder during the transport), and his simultaneous claim that
    he does not know what happened during the transfer.

28

1    witness the cause of injury to Mr. Heinke." Id., ¶ 8.[14] Plaintiff

2    has identified no witness or other evidence showing that

3    DeLaughder caused the injury to plaintiff's foot.  Defendants

4    have met their initial burden on summary judgment.

5        Plaintiff once again makes no effort to meet his burden on

6    summary judgment.  Rather than identify evidence that would put

7    the issue in dispute, plaintiff simply launches a new line of

8    speculation about what might have happened to him.  In his

9    Opposition brief, plaintiff now says that he:

10           believes [DeLaughder] put his 300 pounds of
             weight on [plaintiff's] foot, perhaps when it
11           was on a grate. Or it could be [DeLaughder]
             closed the heavy cell door on plaintiff's leg
12           and crushed his ankle that way.

13   Pl. Oppo. at 5.  Plaintiff cites to nothing in support of this

14   transparent speculation.  Instead, his own declaration, submitted

15   in opposition to the summary judgment motion, makes plain that

16   the assertions in the brief are pure

17   speculation:

18           My doctor told me afterward an injury like I
             had could not have come from a mere fall.  …
19           It required a great weight or pressure.  I
             thought then the big red headed officer had
20           landed on me or I had caught my foot in a
             drain grate and he pushed on my leg.  Now I
21           wonder if the damage was caused by a cell
             door being slammed on my foot.  I know I did
22           not do this to myself.

23

24   ─────────────────

25   [14] DeLaughder also testified under oath that he first became aware
     that plaintiff had a foot or ankle injury one or two days after
26   plaintiff was placed in safety cell 103, at which time DeLaughder
     testified that he notified the "on duty" supervisor.  Declaration
27   of Clayton DeLaughder (January 9, 2014) ("DeLaughder Decl. ")
     (ECF No. 36-5) ¶ 7.

28

1   Heinke Decl. ¶ 10.[15]   In other words, with discovery closed,

2   plaintiff asks to go to trial having no idea how his injury

3   occurred, what DeLaughder may have done, whether DeLaughder had

4   anything to do with his injury at all, and having no evidence

5   regarding the matter.

6        Although the plaintiff does not argue this, the court notes

7   that plaintiff has presented evidence that he has an injury to

8   his foot, and that the injury occurred while he was in jail.  See

9   Exh. 5 (ECF No. 40-1 at 8) to R. Heinke Decl. (photo); R. Heinke

10  Decl. ¶ (2) ("While incarcerated at the Tehama County Jail, I

11  sustained a serious injury to my left heel").  However, there

12  simply is no reasonable inference that can be drawn that the

13  injury happened during the transfer from the dormitory to the

14  single cell.[16]  There is also no reasonable inference to be drawn

15  that it was caused – intentionally or not – by DeLaughder.

16  Plaintiff does testify that the foot injury "occurred more than a

17  day before I was taken to the hospital."[17]  It appears, from the

18  undisputed evidence submitted by defendants, that plaintiff was

19  taken to the hospital on June 22, 2011.  See "Supervisor's Daily

20  [15] Further confirming that this is all speculation, plaintiff also
21  states in his declaration that "DeLaughder or whoever actually
    moved me to the HI03 cell on June 21, 2011, either knew I could
22  not walk, or injured me when I arrived at the cell, smashing my
    ankle with the door when I entered."  R. Heinke Decl. ¶ 14.
23  [16] Plaintiff states that when he "was in a solo cell," he was "in
    a lot of pain."  R. Heinke Decl. ¶ 6.  However, he does not say
24  when this pain occurred or when it started.

25  [17] Plaintiff alleges in the Complaint that the injury occurred
26  before he was placed into the single cell. Complaint ¶¶ 13 & 14.
    If the allegation were true, it would have been such a simple
27  matter to add it to plaintiff's declaration.  However, there is
    nothing in his declaration, or any other evidence plaintiff
28  submitted, to support this allegation.

1  Log" (ECF No. 36-7), Attachment C to the Declaration of Colleen

2  Lewis.  As best the court can tell, the transfer occurred on June

3  15 or 16, 2011, and the first date plaintiff refers to when he

4  had pain in the foot is June 21, 2011.  See Heinke Decl. ¶¶ 6-8.

5      Plaintiff having again failed to meet his burden to show a

6  genuine dispute about whether DeLaughder caused the injury to his

7  foot, defendants are entitled to summary judgment on the claim

8  that DeLaugher inflicted a constitutional injury on plaintiff by

9  injuring plaintiff's foot through the use of excessive force.

10     **C.   Fourteenth Amendment - Deprivation of Food and Water.**

11     Plaintiff alleges that during his time in jail, DeLaughder

12  deprived him of "regular meals," and deprived him of "water and

13  food for the majority of the time he was housed in the

14  segregation unit."  Complaint ¶¶ 14 & 29.

15     Defendants assert that plaintiff has identified no evidence

16  that DeLaughder deprived plaintiff of food or water.  When asked,

17  in Interrogatories, to assert "every fact" supporting his

18  deprivation claim, plaintiff responded that he "submitted several

19  requests for more food or water," that he "was deprived for so

20  long he was weak, his hands were very shaky he was unable to

21  drink water and would ask for assistance but he was not given

22  assistance.  Plaintiff believes jail records have evidence of

23  this."  Pl. Answers ¶ 10.  The response says nothing about

24  DeLaugher's alleged role in this.

25     Defendants point out that when plaintiff was asked, in

26  Interrogatories, for evidence of the deprivation claim, plaintiff

27  responded that "his food and water were placed at a distance

28

12

1   where it was difficult for him to reach by himself," because of

2   his foot injury, as a result of which, "plaintiff lost 30

3   pounds."  Pl. Answers ¶ 11.  Plaintiff identified no evidence,

4   and makes no mention of DeLaughder.  When asked to "[s]tate every

5   fact which you believe supports your contention that Officer

6   [DeLaughder] failed to take a constitutionally required act,"

7   plaintiff's response does not mention any deprivation of food or

8   water.  Pl. Answers ¶ 7.

9      Defendants have met their initial burden on summary judgment

10  regarding the deprivation claim.

11     In response, plaintiff asserts repeatedly in his brief that

12  he was dehydrated and hungry, and that DeLaughder knew about it.

13  See, e.g., Pl. Oppo. at 2 (referring to plaintiff's "state of

14  dehydration") & 3 (DeLaughder was "well aware" he and others were

15  "depriving plaintiff of water").  However, statements in

16  plaintiff's brief do not meet his summary judgment burden.

17  Nothing in plaintiff's declaration indicates that DeLaughder was

18  the cause of the alleged deprivation, or that he was even aware

19  of it.

20     The only other "evidence" plaintiff submits in opposition to

21  the summary judgment motion are the exhibits to his  declaration,

22  none of which shed light on the alleged deprivation, and the

23  declaration of his counsel.[18]  Counsel's declaration, even

24  _____

25  [18] See Declaration of Ellen C. Dove in Opposition of Motion for
    Summary Judg8ment [sic] (February 24, 2014) ("Dove Decl.") (ECF

26  No. 42).  Plaintiff's counsel has, for some reason, interposed
    herself as a percipient witness in this case.  Inexplicably,

27  counsel testifies to things in her own declaration that plaintiff
    could presumably have testified to himself.  See, e.g., Dove

28  Decl. ¶ 4 ("Heinke had no clothes, no bed and not even the most

13

assuming it were proper for her to offer percipient witness testimony while acting as plaintiff's lawyer,[19] says that a jail note indicates that "'Nurse Phil advised that we contnue [sic] to monitor his fluid intake and make sure that he is well hydrated.'" Dove Decl. ¶ 9.[20]

In short, plaintiff has offered no evidence to create a genuine dispute about whether DeLaughder deprived plaintiff of food and water. Defendants are therefore entitled to summary judgment on the claim that DeLaughder inflicted a constitutional injury on plaintiff by depriving him of food and water.

### D. Fourteenth Amendment – Deprivation of Medical Care.

Plaintiff alleges that during his time in jail, DeLaughder deprived plaintiff of medical care. Complaint ¶¶ 14 & 29. He alleges that he needed medical care to take care of his severe dehydration, his injured foot and a head injury. Complaint ¶ 17.

#### 1. Head injury.

Here, at last, plaintiff offers some evidence in support of his claim. Specifically, plaintiff directs the court to evidence that DeLaughder knew of plaintiff's "head injury," namely, a bruise over plaintiff's left eye, that DeLaughder made an

---

minimal hygiene").

[19] But see, Rickley v. County of Los Angeles, 654 F.3d 950, 953 (9th Cir. 2011) (noting possible conflict of interest where trial counsel is also a percipient witness).

[20] This note does not appear to support a claim that DeLaughder withheld food and water from plaintiff. Counsel asserts that "Defendants omitted to include the previous day's Supervisor's Log Which does not mention Mr. Heinke at al1." Dove Decl. ¶ 9. However, counsel does not explain the significance of this omission, nor is it apparent to the court.

1    official note of it, and that DeLaughder did nothing to get

2    medical attention for it.  <u>See</u> R. Heinke Decl. ¶ 8.[21]  Indeed,

3    DeLaughder himself testified that on June 21, 2011, he saw that

4    Heinke "had a small bruise and cut from an undetermined source."

5    DeLaughder Decl. ¶ 6.  DeLaughder does not indicate that he

6    summoned medical assistance, but rather that he had Heinke

7    transferred to a "safety" cell because plaintiff's mental

8    condition – he was "talking to himself, and he seemed to be

9    hallucinating" – indicated that he "was a danger to himself."

10   <u>Id.</u>

11       Plaintiff offers no other evidence regarding the head

12   injury.  The question then, is whether this evidence is enough to

13   avoid summary judgment on plaintiff's Fourteenth Amendment claim

14   of deliberate indifference to his serious medical needs.  It is

15   not.[22]

16   _____

     [21] Plaintiff later refers to the bruise as an "obvious injur[y]"

17   to his head.  R. Heinke Decl. ¶ 14.

18   [22] The court is not ruling on whether or not the failure to report

19   an inmate's head injury to medical personal is a good practice,
     only that in this case, plaintiff has produced no evidence that

20   it resulted in a constitutional injury.

21   The court notes that plaintiff's counsel, in her declaration,
     asserts that she questioned DeLaughder during his deposition, and

22   that he told her "nothing to indicate he was qualified to
     evaluate Mr. Heinke's mental or physical status."  Dove Decl.

23   ¶ 10.

24   Since there is plainly no constitutional injury here, the court
     need not evaluate counsel's bizarre decision not to simply

25   excerpt DeLaughder's deposition and attach it as an exhibit to
     her declaration.  Instead, counsel presents DeLaughder's

26   testimony as a hearsay statement, with no citation to the
     deposition itself (indicating that perhaps counsel is just

27   recounting what she happens to remember of the deposition), and

28   with herself as a percipient witness to what DeLaughder

1    A Fourteenth Amendment claim that "correction facility

2  officials violated pretrial detainees' constitutional rights by

3  failing to address their medical needs" is analyzed "under a

4  'deliberate indifference' standard." <u>Clouthier v. County of</u>

5  <u>Contra Costa</u>, 591 F.3d 1232, 1241 (9th Cir. 2010).  It is the

6  same standard used in Eighth Amendment "deliberate indifference"

7  cases.

> "[F]irst the plaintiff must show a serious
> medical need by demonstrating that failure to
> treat a prisoner's condition could result in
> further significant injury or the unnecessary
> and wanton infliction of pain. Second, a
> plaintiff must show the defendant's response
> to the need was deliberately indifferent."
> <u>Conn</u>, 591 F.3d at 1094-95 (internal quotation
> marks and citation omitted).  The "deliberate
> indifference" prong requires "(a) a
> purposeful act or failure to respond to a
> prisoner's pain or possible medical need, and
> (b) harm caused by the indifference." <u>Jett v.</u>
> <u>Penner</u>, 439 F.3d 1091, 1096 (9th Cir.2006);
> <u>Conn</u>, 591 F.3d at 1095 (quoting Jett, 439
> F.3d at 1096). … "[T]he indifference to [a
> prisoner's] medical needs must be
> substantial.  Mere 'indifference,'
> 'negligence,' or 'medical malpractice' will
> not support this [claim]." <u>Broughton v.</u>
> <u>Cutter Labs.</u>, 622 F.2d 458, 460 (9th
> Cir.1980) (citing <u>Estelle v. Gamble</u>, 429 U.S.
> 97, 105-06 (1976)).  Even gross negligence is
> insufficient to establish deliberate
> indifference to serious medical needs.  <u>Wood</u>
> <u>v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir.
> 1990).

---

testified.  Although counsel cites to specific pages of the
deposition later (¶ 11), she has not submitted the deposition to
the court, nor any excerpts from it.

1   <u>Jennings v. Moreland</u>, 2014 WL 546357 at *4 (E.D. Cal. 2014)

2   (Karlton, J.) (quoting <u>Lemire v. California Dept. of Corrections</u>

3   <u>and Rehabilitation</u>, 726 F.3d 1062, 1081–82 (9th Cir. 2013)).

4       In this case, the court need not address whether the bruise

5   was a "serious medical need," or whether the failure to summon

6   medical assistance for it was "deliberately indifferent," because

7   plaintiff offers no evidence of any harm resulting from the

8   failure to summon medical assistance for the bruise.  It is

9   certainly not beyond the realm of possibility that a head bruise

10  could be indicative of a serious injury, and that ignoring it

11  could lead to dire consequences.  However, plaintiff does not

12  provide evidence of any consequences flowing from DeLaughder's

13  failure to summon medical assistance for the bruise.  Defendant

14  does not even assert that the bruise represented a serious

15  medical need.

16              **2.   Injured foot.**

17      Plaintiff alleges that his foot injury was not treated

18  promptly and that the delay in treatment "made the injury worse

19  and diminished the chances for an optimal recovery."  Complaint

20  ¶ 12.  Plaintiff alleges that he continues to have "significant

21  scarring and continuing pain and difficulty ambulating."  <u>Id.</u>

22      In his declaration, plaintiff establishes that his foot

23  injury represented a serious medical need.  Indeed plaintiff's

24  evidence shows that plaintiff suffered "a broken right heel."

25  <u>See</u> Exh. 7 (June 22, 2011 "Supervisor's Daily Log," of "Sgt.

26  D. Hohenstein") (ECF No. 40-2) to R. Heinke Decl.

27      Plaintiff has not, however, produced any evidence that

28  DeLaughder was "deliberately indifferent" to plaintiff's need for

medical treatment of his foot injury.  The first inquiry here is whether DeLaughder was aware of the injury.  He could not have been deliberately indifferent to an injury that was not brought to his attention in some way.  See Jennings, id., at *4 ("a plaintiff must show the defendant's response to the need was deliberately indifferent").  Plaintiff does not, for example, assert that he ever told DeLaughder, or anyone else, about his foot injury.  He does not assert that he showed the injury to DeLaughder or anyone else.[23]  He does not assert that he asked DeLaughder or anyone else for medical assistance for the injury.  See, e.g., Jennings, id., at *5 (denying summary judgment on the "deliberate indifference" claim as to some defendants where plaintiff presented evidence that he "told defendants" that "he was in 'terrible pain' and needed to see a doctor, and that none of them took any action to address his complaints," and as to other defendants, because there was a dispute over whether plaintiff showed the injury to them and requested medical assistance).[24]

Plaintiff does assert that his "injuries" were "obvious." R. Heinke Decl. ¶ 14.  However, he appears to limit the obviousness claim to the injury "to my head at least." Id.  In

---

[23] Plaintiff says that he had "obvious injuries," but he does not explain what was obvious about the foot injury.

[24] It would have been such a simple matter for plaintiff to include this information in his declaration, if true, but he did not do so.  Plaintiff is not entitled to force the court and defendants to expend scarce resources on a trial if he cannot show that he is capable of producing evidence that would permit a fact-finder to render a judgment in his favor.

1   any event, plaintiff does not explain what was "obvious" about

2   the foot injury, for example, whether he was limping, or whether

3   the foot was bleeding.[25]

4       Plaintiff simply asserts that DeLaughder, through some

5   unspecified mechanism, "either knew that I could not walk," or

6   that DeLaughder caused the injury himself.  R. Heinke Decl. ¶ 14.

7   Plaintiff's first theory is, in essence, an absurd claim that

8   plaintiff can read DeLaughder's mind.  Plaintiff does not assert

9   that, for example, DeLaughder observed plaintiff's inability to

10  walk, or saw him hobble around, or heard him cry out in pain.[26]

11      The alternate theory, that DeLaughder knew of the injury

12  because he "injured me when I arrived at the cell, smashing my

13  ankle with the door when I entered," is pure speculation – along

14  with plaintiff's speculation that the injury occurred when his

15  foot was caught in a grate – since plaintiff testifies that he

16  was unconscious at the time the injury occurred, and that he has

17  "no recall of those events."[27]  R. Heinke Decl. ¶ 7.

18  _____

19  [25] Plaintiff could at least have said, for example, that he wore
    no socks or footwear to cover up the injury, and that the injury

20  was visible to the naked eye, if that is the truth.  Plaintiff
    offers nothing from which the court could conclude or infer that

21  DeLaughder was made aware of plaintiff's foot injury.

22  [26] The absence of any evidence or testimony on this is
    particularly confounding since plaintiff's Complaint alleges that

23  plaintiff was "ridiculed by the guards" because "he was hobbling
    around like a frog."  Complaint ¶ 14.  Support for those

24  allegations are entirely missing from plaintiff's declaration.

25  [27] Plaintiff asks, "How could [DeLaughder] not have seen my ankle
    injury when I was brought there, unless he injured me when I

26  arrived?"  This is not evidence.  Rather, it refers to a factual
    issue that plaintiff must show is genuinely in dispute if he

27  wishes to avoid summary judgment.  It is plaintiff's job here to

28  show that he could answer the question at trial with evidence,

Defendants, on the other hand, have produced actual evidence that DeLaughder did not initially know of plaintiff's foot injury, and that as soon as he became aware of it, he reported it to "the on duty supervisor."  <u>See</u> DeLaughder Decl. ¶ 7.

### 3.    Food and water.

Plaintiff asserts that while he "was in a solo cell," he was hungry and asked "for food and water."  <u>Id.</u>, ¶ 6.  He asserts that he "was deprived of food and water."  <u>Id.</u>  He asserts that he "was not checked on by anyone who opened the door or came in on a regular basis."  <u>Id.</u>  Plaintiff also asserts that DeLaughder "left me injured and untreated, as well a [sic] deprived of food and water."  <u>Id.</u>, ¶ 2.

These bare-boned assertions are simply not enough support a claim that DeLaughder knew that plaintiff was becoming dehydrated, or that food and water were being withheld.  To the contrary, plaintiff's own testimony refutes any inference that might otherwise be drawn that the withholding of water had anything to do with DeLaughder.  During his deposition, plaintiff stated that he "begged for water."  Deposition of Robert Lawrence Heinke (December 11, 2013) ("Heinke Depo.") at 100.  However, he admitted that he did not ask DeLaughder for water.

Q. Okay. Do you remember asking for water at any time when you were in there?

A. Yes. I begged for water.

Q. And whom did you beg?

_____

and in a way that would allow a fact-finder to rule in his favor; it is not enough for him simply to ask the question.

1    A. In other words, the officer that was looking in the

2    window.

3    Q. Who was that officer?

4    A. I don't know. There's so many officers that work at the

5    jail.

6    Q. Was it DeLaughder?

7    A. No. DeLaughder was the last one that I remember.

8    Q. I'm saying the one that you asked for water, was that

9    DeLaughder?

10    A. No.

11   Heinke Depo. at 100.  Further, plaintiff offers no evidence of

12   any kind that DeLaughder was aware of any problem with

13   plaintiff's access to food or water, or his state of dehydration.

14        Meanwhile, defendants have produced evidence that plaintiff

15   had appropriate access to food and water, and that DeLaughder was

16   not aware that plaintiff was dehydrated or deprived of food and

17   water.  See, e.g., DeLaughder Decl. ¶ 4 ("I was not aware, nor

18   did I have any reason to believe that Mr. Heinke ever failed to

19   receive a meal or was without access to water").[28]

20

21   _____

     [28] Defendants also submitted the Declaration of Chad Gibson (ECF
22   No. 36-6), attesting that:

23            It is the policy and routine practice of the
              Tehama County Jail that inmates are given
24            access to drinking water. Each cell or
              housing location in the jail has a drinking
25            faucet except for the safety cell in the
              booking area. Inmates housed in the safety
26            cell are routinely offered water; we also
              provide water to the inmate any time that the
27            inmate requests it, which is provided in a
              Styrofoam cup. This is documented by jail
28            staff. I cannot think of any circumstance in
              which an inmate would be denied water.

                              21

1        **E.   County Liability.**

2       There are two basic routes to Section 1983 County liability

3  pursuant to <u>Monell v. New York City Dept. of Social Services</u>, 436

4  U.S. 658 (1978): (1) the County itself violated plaintiff's

5  rights, or directed its employees to do so, acting with the

6  required state of mind; or (2) the County is responsible for a

7  constitutional tort committed by its employee.  <u>Gibson v. County</u>

8  <u>of Washoe, Nev.</u>, 290 F.3d 1175, 1185-87 (9th Cir. 2002)

9  (describing "two routes" to municipal liability under

10  Section 1983 for deliberate indifference to inmate's medical

11  needs), <u>cert. denied</u>, 537 U.S. 1106 (2003).[29]

12       Plaintiff has offered no evidence of any County action or

13  policy (for example, inadequate supervision or training) that

14  caused plaintiff any injury, or that DeLaughder committed any

15  constitutional tort for which the County could be liable.

16       Defendants will therefore be granted summary judgment on the

17  claim that the County is liable for any constitutional injury to

18  plaintiff.

19       **F.   The Bane Act, Cal. Civ. Code § 52.**

20       Plaintiff asserts a state claim based upon the same

21  completely unsupported allegations that comprise his federal

22  constitutional claim.  For the reasons stated above, defendants

23  will be granted summary judgment on this claim also.

24  ////

25

26  _____

27  [29] <u>Citing</u> <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 404,
406-07 (1994) and <u>Canton v. Harris</u>, 489 U.S. 378, 387 (1989)).

28

1        **G.   Americans with Disabilities Act.**[30]

2        Plaintiff alleges that he was a person with a disability

3   while in jail, because of his heel injury.  Complaint ¶ 36.  He

4   alleges that he was discriminated against because of his

5   disability, in violation of Title II of the Americans with

6   Disabilities Act.  On the motion to dismiss, this claim survived

7   solely because plaintiff adequately <u>alleged</u> that the guards

8   "mocked him <u>for his disability</u>" (they allegedly ridiculed him for

9   hobbling around "like a frog"), in response to his request for

10  food and water.  <u>See</u> ECF No. 32 at 12 (emphasis in text).

11       Defendants assert that plaintiff cannot produce evidence of

12  any adverse action taken against him that was the result of his

13  disability.  In addition, defendants have produced evidence that

14  plaintiff was not deprived of food and water, as discussed above.

15       In response, plaintiff has produced no evidence of any kind

16  to show that his disability was the cause of his allegedly being

17  deprivation of food and water, or suffering any other adverse

18  action by defendants.  Indeed, plaintiff has produced no evidence

19  of the key allegation that saved his Complaint from dismissal –

20  the allegation that the guards ridiculed him for his injury when

21  he requested necessities.

22       The court will grant defendants' motion for summary judgment

23  on the ADA claim.

24       **H.   Battery.**

25       Plaintiff alleges that a jail employee tasered him "for no

26  reason," and that DeLaughder broke his ankle.  Complaint ¶ 39.

27  _____

28  [30] This claim is asserted only against the County, as defendant
    DeLaughder was dismissed out of this claim.  <u>See</u> ECF No. 32.

1   As discussed above, defendant has shown that plaintiff has

2   identified no evidence that he was tasered by DeLaughder or

3   anyone else, and no evidence that DeLaughder broke his ankle.

4       The court will grant defendants' motion for summary judgment

5   on the battery claim.

6                        **V.    CONCLUSION**

7       The mystery of this case is what plaintiff has been doing

8   from the time he filed his original complaint until the close of

9   discovery.  One thing is clear.  He has not bothered to adduce

10  evidence that could withstand a motion for summary judgment.

11      For the reasons stated above,

12          1.    Defendants' motion for summary judgment is **GRANTED**

13  in its entirety;

14          2.    This case is **DISMISSED**, in its entirety, with

15  prejudice; and

16          3.    The Clerk is directed to close this case.

17      IT IS SO ORDERED.

18      DATED:  April 18, 2014.

19

20

21

22                        LAWRENCE K. KARLTON
                          SENIOR JUDGE
23                        UNITED STATES DISTRICT COURT

24

25

26

27

28

                            24